**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ERMA S. ORTIZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  3:16-CV-75-M-BH** |
| | § | |
| **NANCY A. BERRYHILL, ACTING,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge** |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to *Special Order No. 3-251*, this social security appeal was automatically referred for full case management. Before the Court are *Plaintiff's Appeal from the Decision of the Commissioner of Social Security*, filed April 16, 2016 (doc. 16), *Defendant's Brief in Support of the Commissioner's Decision*, filed June 15, 2016 (doc. 19), and *Plaintiff's Reply to Brief of Defendant* filed July 1, 2016 (doc. 20).  Based on the relevant filings, evidence, and applicable law, the Commissioner's decision should be **AFFIRMED**.

## I.  BACKGROUND[1]

### A.    <u>Procedural History</u>

Erma S. Ortiz (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner)[2] denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and for supplemental security income (SSI) under Title XVI

---

[1]   The background information is summarized from the record of the administrative proceeding, which is designated as "R."

[2]   At the time of filing of this appeal, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration, but she was succeeded by Nancy A. Berryhill beginning January 20, 2017.

of the Act.[3]  (R. at 1, 7.)  On April 18, 2013, Plaintiff filed her applications for DIB and SSI, alleging

disability beginning on May 9, 2012. (R. at 197, 201.)  Her claims were denied initially and upon

reconsideration.  (R. at 135-42, 148-54.)  Plaintiff requested a hearing before an Administrative Law

Judge (ALJ), and personally appeared and testified at a hearing on October 9, 2014.  (R. at 28-59.)

On October 23, 2014, the ALJ issued a decision finding that Plaintiff was not disabled and denying

her claims for benefits.  (R. at 7-27.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council.  (R. at 6.)  The Appeals

Council denied her request for review on December 18, 2015, making the ALJ's decision the final

decision of the Commissioner.  (R. at 1-5.)  Plaintiff timely appealed the Commissioner's decision

under 42 U.S.C. § 405(g).  (*See* doc. 1.)

## B.    Factual History

### 1.    Age, Education, and Work Experience

Plaintiff was born on August 29, 1965, and was 49 years old at the time of the hearing before

the ALJ. (R. at 21.)  She graduated from high school and earned a diploma.  (R. at 21.)  She had past

relevant work experience as a washer and washer/driver.  (R. at 21.)

### 2.    Medical Evidence

On March 22, 2012, Plaintiff was admitted to Parkland Memorial Hospital (Parkland) for

recurrent back pain. (R. at 391-92.)  She received X-rays that showed "mild-moderate" degenerative

changes of the lower thoracic and lumbar spine. (R. at 391.)  She was diagnosed with lumbar spine

degenerative changes with no acute abnormalities and prescribed pain medication.  (R. at 391,

---

[3]  Plaintiff previously applied for disability insurance benefits and social security income on March 3, 2011, but her
claims were denied on April 3, 2013.  (R. at 60-87.)  The record includes the decision and oral hearing transcript from
her previous applications, but they will not be recited here because she is not appealing the denial of those claims.

413-14.)

Between April 12, 2012, and January 6, 2013, Plaintiff returned to Parkland on four separate occasions for pain in her legs, shoulders, back, and ears.  (R. at 415-17, 418-19, 420-21, 421-23.) During each visit, she received a musculoskeletal exam that showed tenderness and discomfort in her lumbar spine area.  (R. at 417, 419, 420, 422.)  During her visit on September 22, 2012, Plaintiff had a "slightly restricted" and painful range of motion in her shoulder. (R. at 420.)  During her visits on April 12, 2012, and January 6, 2013, however, she had a "normal range of motion" and appeared "negative for back pain." (R. at 416-17, 422.)

On July 15, 2013, Plaintiff met with Dr. Paul Patrick, D.O., for an internal medicine examination.  (R. at 332-44.)  He noted that she reported "10/10" stabbing back pain and extreme physical limitations due to the pain.  (R. at 333-34.)  Dr. Patrick reported tenderness in her lumbar spine, left shoulder, both knees, and both ankles.  (R. at 336.)  He further noted that she was "unable to perform heel and toe walking, squatting, and hopping."  (R. at 336.)  Dr. Patrick examined and tested the range of motion of both her upper and lower extremities, which showed significant limitations on Plaintiff's left shoulder, left hip, and lumbar spine.  (R. at 341-42.)  She exhibited pain but had a normal range of motion in her right shoulder and right hip.  (R. at 341-42.)  There were also minor limitations in the range of motion of her wrists, elbow, knees, ankles, and cervical spine. (R. at 341-42.)  Her upper extremity grip and strength was assessed at "5/5" for both the right and left sides, while her lower extremity strength was assessed at "3/5" for both the right and left sides. (R. at 341-42.)  Dr. Patrick opined that Plaintiff was limited to sitting for 30 minutes or less, standing for 20 minutes or less, walking half a block at most, able to lift 10 pounds in her right hand and only 1-2 pounds in her left hand, and had a limited ability to perform fine finger control in her

left hand.  (R. at 337.)

On August 15, 2013, Dr. Betty Santiago, M.D., a state agency medical consultant (SAMC), completed a medically determinable impairment and residual functional capacity (RFC) assessment of Plaintiff based upon the evidence on record.  (R. at 92-95.)  She diagnosed her impairments as dysfunction of her major joints and diabetes mellitus, but she determined that the "overall impact of [Plaintiff's] symptoms [did] not wholly compromise [her] ability to function independently, appropriately, and effectively."  (R. at 93.)  She opined that Plaintiff had the following limitations: could occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds; could stand, walk, or sit about 6 hours in an 8-hour workday; could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; could occasionally climb ladders, ropes, and scaffolds; and had unlimited pushing, pulling, and balancing ability.  (R. at 94.)

On October 28, 2013, and January 3, 2014, Plaintiff returned to Parkland for leg and neck pain.  (R. at 430-32, 434-36.)  Her musculoskeletal exams showed tenderness in her hips, knees, left ankle, and lumbar back, but she was "negative for myalgias and back pain" and "exhibit[ed] normal range of motion" in her back.  (R. at 432, 434-36.)  She was diagnosed with degenerative joint disease and prescribed pain medication.  (R. at 367, 436.)

On January 6, 2014, Plaintiff met with Dr. Patrick for a second internal medicine evaluation.  (R. at 366-78.)  She reported that her pain was at a "7/10" in her ankles and knees, a "8/10" in her left shoulder, a "9/10" in her left hip, and a "10/10" in her back.  (R. at 369.)  Dr. Patrick again noted tenderness in her lumbar spine, left shoulder, both knees, and both ankles.  (R. at 372.)  He further reported that she was "unable to perform heel and toe walking, squatting, and hopping."  (R. at 372.)  He again examined and tested Plaintiff's range of motion in her upper and lower extremities; she

had minor but painful restrictions in her left shoulder and lumbar spine but no longer had any bilateral pain in her knees or ankles.  (R. at 374-75.)  Her upper extremity grip and strength was assessed at "5/5" for both the right and left sides, and her lower extremity strength was increased to "4/5" for both the right and left sides.  (R. at 374-75.)  Dr. Patrick opined that Plaintiff was limited to sitting for 30 minutes or less, standing for 10 minutes or less, walking half a block at most, able to lift 5 pounds or less in both hands, and could use fine finger control without limitation.  (R. at 373.)

On January 23, 2014, Dr. Shabnam Rehman, M.D., a SAMC, completed a medically determinable impairment and RFC assessment of Plaintiff based upon the evidence on record.  (R. at 116-19.)  She agreed with Dr. Santiago's diagnosis that her impairments were dysfunction of her major joints and diabetes mellitus.  (R. at 116.)  She opined that Plaintiff had the following limitations: could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; could stand, walk, or sit about 6 hours in an 8-hour workday; could frequently stoop, kneel, and crouch; could occasionally crawl, balance, and climb ramps, stairs, ladders, ropes, and scaffolds; and had unlimited pushing and pulling ability.  (R. at 117-18.)

On February 7, 2014, and April 8, 2014, Plaintiff returned to Parkland for hip, shoulder, and back pain.  (R. at 436-38, 443-45.)  Her musculoskeletal exams showed that she exhibited tenderness on her lower lumbar spine and restricted joint movements in her left hip and shoulder due to pain.  (R. at 437, 441.)  She received X-rays that showed "slightly worse" lumbar disc degeneration than she had two years prior and "mild bilateral osteoarthritis" of her hips.  (R. at 393-94.)  She was diagnosed with degenerative joint disease and prescribed pain medication.  (R. at 437-38, 441.)

On April 14, 2014, Plaintiff began physical therapy at Parkland.  (R. at 443-45.)  Her

symptoms were noted as being "consistent with degenerative changes of bilateral shoulders and possible rotator cuff pathology." (R. at 444.) It was assessed that she was capable of "carrying, moving, and handling objects," but was "at least 60 percent but less than 80 percent impaired, limited, or restricted." (R. at 444.)

On May 29, 2014, Plaintiff was discharged from her physical therapy program. (R. at 446-47.) It was noted that she had "demonstrated slow but steady progress," had decreases in her pain ratings, and had met all of her goals except to increase the range of motion in her shoulders. (R. at 446.) She was found capable of "carrying, moving, and handling objects," and "at least 40 percent but less than 60 percent impaired, limited, or restricted." (R. at 447.)

### 3.   Hearing Testimony

On October 9, 2014, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (R. at 28-59.) Plaintiff was represented by an attorney. (R. at 30.)

#### a.   *Plaintiff's Testimony*

Plaintiff testified that she was born on August 29, 1965, and was 49 years old. (R. at 34.) She had never been married and lived with her mother and brother. (R. at 35.) She could drive and was able to complete routine errands such as buying groceries. (R. at 36.) She graduated from high school, but she had been placed in special education classes for reading and writing. (R. at 36.)

Plaintiff had not worked in over two years and had not applied for any jobs since May 2012. (R. at 37.) She most recently worked for a car rental company where she would check-in, drive, wash, and detail the cars that were returned. (R. at 38.) When Plaintiff was first hired at the rental company, she primarily cleaned and detailed the rental cars, but she was later "moved up" to driving and checking-in the cars because she could no longer "bend over very much . . . to vacuum the cars

and clean them." (R. at 40-41.) After she stopped working at the car rental company in early 2012, she collected unemployment benefits during the first, second, and third quarter of 2012. (R. at 39.)

Plaintiff testified that she had suffered from osteoarthritis that prevented her from working. (R. at 39.) She could not perform any of her previous work due to the pain or work at any job where she had to stand on her feet most of the time. (R. at 41-42.) It hurt when she lifted her shoulders, reached forward, and reached overhead. (R. at 44-45.) She had been prescribed pain medication for pain in her knees, back, and shoulders; the medication "help[ed] at the time, but it . . . still hurt." (R. at 43, 45.) She took hot showers and applied a heating pad "almost every day" to help alleviate the pain. (R. at 45.) Her lower back pain became worse when she "sat too long or walk[ed] too much" and the pain frequently "traveled down" her legs. (R. at 46-47.) She had to lie down "at least twice a day" for 30 minutes to an hour at a time to help her back pain. (R. at 46.) She also testified that she had suffered from diabetes and experienced "burning sensations" in her feet and hands when her blood sugar was high. (R. at 52-53.) She stated that she could walk only half a block, stand for 15 minutes, sit for 30 minutes to an hour, and could not lift a gallon of liquid. (R. at 49-50.)

### b. VE's Testimony

The VE testified that she had reviewed Plaintiff's work history and determined that she had the following past relevant work: washer, DOT 599.687-030 (medium, unskilled, SVP: 2) and washer/driver, DOT 919.663-010 (light, semi-skilled, SVP: 3). (R. at 56.)

The ALJ asked the VE to consider a hypothetical person with the same age and education as Plaintiff who was able to do less than the full range of sedentary work with the following limitations: not able to climb ladders, ropes, and scaffolds and only occasionally able to perform all other postural actions. (R. at 57.) The VE responded that this hypothetical individual could not

perform any of Plaintiff's past relevant work.  (R. at 57.)

The ALJ then asked the VE if that hypothetical person could perform any other work in the national and regional economy.  (R. at 57.)  The VE responded that this hypothetical person could perform the following jobs: order clerk, DOT 209.567-014 (sedentary, unskilled) with 185,000 jobs in the national economy and 5,500 in Texas; callout operator, DOT 237.367-014 (sedentary, unskilled) with 160,000 jobs in the national economy and 6,200 in Texas; and charge account clerk, DOT 205.367-014 (sedentary, unskilled) with 180,000 jobs in the national economy and 4,900 in Texas.  (R. at 57-58.)

Plaintiff's attorney asked the VE to assume that the hypothetical individual had the additional limitations of sitting limited to 30 minutes at a time; standing limited to 10 minutes at a time; walking limited to half a block; and lifting limited to 5 pounds or less.  (R. at 58.)  The VE responded that no jobs in the national or local economy existed for an individual with those limitations.  (R. at 58-59.)

## C.    ALJ's Findings

The ALJ issued his decision denying benefits on October 23, 2014.  (R. at 7-27.)  At step one,[4] he determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 9, 2012.  (R. at 12.)  At step two, the ALJ found that the medical evidence established that Plaintiff had the following severe or combination of impairments: type II diabetes mellitus, mild to moderate lumbar degenerative disc disease, and obesity.  (R. at 13.)  At step three, the ALJ concluded that Plaintiff's severe impairments or combination of impairments did not meet or equal the requirements for presumptive disability under the listed impairments in 20 C.F.R. Part

---

[4] The five-step analysis used to determine whether a claimant is disabled under the Social Security Act is described more specifically below.

404.  (R. at 17.)

Next, the ALJ determined that Plaintiff retained the RFC to perform the full range of sedentary work with the following limitations: she could lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; could stand and walk 2 hours out of an 8-hour workday and sit 6 hours out of an 8-hour workday; could never climb ropes, ladders, or scaffolds; and could only occasionally climb ramps/stairs, balance, stoop (*i.e.* bend at the waist), kneel, crouch (*i.e.* bend at the knee), and crawl.  (R. at 18.)

At step four, the ALJ determined that Plaintiff could not return to any of her past relevant work experience.  (R. at 21.)  At step five, the ALJ relied upon the VE's testimony to find Plaintiff capable of performing work that existed in significant numbers in the national economy, including jobs such as order clerk, call-out operator, and charge account clerk.  (R. at 22.)  Accordingly, the ALJ determined that she had not been under a disability, as defined by the Social Security Act, from the alleged onset of disability date of May 9, 2012, through the date of his decision.  (R. at 22.)

## II. ANALYSIS

### A. <u>Legal Standards</u>

#### 1. **Standard of Review**

Judicial review of the commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558,

564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision. *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program.  *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985).  Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id.*  The Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision.  *Id.*

### 2.     Disability Determination

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act.  *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 189, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.      An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" will not be found to be disabled.

4.      If an individual is capable of performing the work he had done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v)).   Under the first four steps of the analysis, the burden lies with the claimant to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id*.  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by vocational expert testimony, or other similar evidence.  *Froga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.**      **Issues for Review**

Plaintiff presents two issues for review:

11

1.     A state agency consultative examiner found that [Plaintiff] had limited range of motion of her left shoulder, pain on range of motion of the knees and ankles, and restricted range of motion of the cervical spine.  The same physician examined her six months later and found tenderness and crepitation in the left shoulder, both knees and both ankles; limited range of motion of the left shoulder, with pain; and restricted range of motion of the cervical spine.  Physical therapy evaluations found decreased upper extremity strength and limited shoulder joint mobility.  Yet, the ALJ found that Plaintiff's degenerative joint disease of the left shoulder, cervical degenerative disc disease, and degenerative joint disease were not, either singly or in combination, "severe" impairments.  Did the ALJ properly consider all of the Plaintiff's severe impairments in determining residual functional capacity?

2.     A consultative examiner found that Plaintiff [was] limited to sitting short periods of 30 minutes or less; standing for 10 minutes; walking 1/2 block; and lifting weights of 5 pounds or less.  The ALJ did not refer to the opinions of the consultative examiner, nor did he indicate what weight, if any, he gave to these medical opinions.  Did the ALJ properly evaluate medical opinion evidence?

(doc. 16 at 2-3.)

## C.     <u>Severe Impairment</u>

Plaintiff argues that the ALJ erred by failing to "properly consider" and find that her arthritis and degenerative joint disease were severe impairments.  (doc. 16 at 2, 9-11.)

At step two of the sequential evaluation process, the ALJ "must consider the medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii),(c). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010).   Under the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than

12

indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id.* at 1101. In other words, "the claimant [need only] make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work." *Anthony v. Sullivan*, 954 F.2d 289, 294 n. 5 (5th Cir. 1992) (citation omitted).

Here, the ALJ found that Plaintiff's diabetes mellitus, mild to moderate lumbar degenerative disc disease, and obesity were severe impairments because they caused "more than slight abnormalities" based upon the objective medical evidence. (R. at 17.)[5] The ALJ then determined that her arthritis,[6] degenerative joint disease, cervical degenerative disc disease, and bilateral ankle surgery were not severe impairments because there was a lack of "objective, tangible medical evidence" to support a finding of severity. (R. at 16.)

### 1. *Arthritis*

Plaintiff points to the medical records from Dr. Patrick and Parkland as evidence of the severity of the arthritis in her hips. (doc. 16 at 10.) Dr. Patrick's medical records showed that in the six months between evaluations, the range of motion in her hips had doubled in abduction and adduction and had increased from 0 degrees to 50 degrees in forward flexion. (R. at 342, 375.) He also assessed her lower extremity muscle strength as "4/5" and did not opine as to any work-related limitations due to her hip pain. (R. at 342, 373-75.) Plaintiff's medical records from Parkland

---

[5]  Plaintiff does not argue that the ALJ applied an incorrect standard for evaluating a severe impairment under *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). (docs. 16 at 10-11, 20 at 6.)

[6]  The ALJ noted "test results showing positive [for antinuclear antibodies]," which was indicative of arthritis. (R. at 14-16.)

similarly showed that any impairment due to the arthritis in her hips did not affect her work-related limitations. (*See* R. at 390-458.)  During Plaintiff's many exams at Parkland, she rarely identified hip pain, and when she did, it was described simply as a "tenderness," "intermittent," "relieved with Aleve," and caused no limit to her range of motion.  (R. at 415-17, 418-19, 420-21, 421-23, 424, 430-32, 434-36.)  It was not until her exam on February 7, 2014, that her medical records noted some "restricted left hip joint movements due to pain," and that her X-rays showed signs of "mild bilateral osteoarthritis of the hips with no significant joint space narrowing."  (R. at 393, 436-41.) She, however, was not formally diagnosed at that time with osteoarthritis or rheumatoid arthritis in her hip, only "hip pain, left."  (R. at 437.)  There is no other medical or opinion evidence in the record indicating any work-related limitations due to the arthritis in her hips.

Plaintiff has not shown that the arthritis in her hips was severe enough to interfere with her ability to do work.  The medical evidence in the record instead shows substantial evidence to support the ALJ's finding that her arthritis did not interfere with her ability to perform work-related activities.  *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 639 (N.D. Tex. 2013) (finding no error when the ALJ determined an impairment to be non-severe, even though the SAMC found moderate limitations due to the impairment, because there was a lack of examining medical evidence showing any effect on the plaintiff's ability to work); *see also Sweeney v. Astrue*, 796 F. Supp. 2d 827, 833-34 (N.D. Tex. 2011) (finding no error when the ALJ determined an impairment to be non-severe when the ALJ's decision stated that he "consider[ed] all the evidence" and the plaintiff failed to point out anything "that would cause the court to doubt the truthfulness of those statements"). Accordingly, the ALJ did not err.

### 2.    *Degenerative Joint Disease*

Plaintiff relies upon Dr. Patrick's medical records and her physical therapy evaluations to show that her degenerative joint disease was a severe impairment and limited her bilateral manual dexterity.[7] (docs. 16 at 10-11, 20 at 7-8.)  As noted, Dr. Patrick's medical records showed that Plaintiff's range of motion significantly increased over the course of six months in her left shoulder with only minor limitations due to pain.  (R. at 341, 374.)  He also consistently found that Plaintiff had little to no limitations in the range of motion of her right shoulder, both wrists, and both elbows, and that she was able to fully extend her hand and make a fist with "5/5" grip and upper extremity strength.  (R. at 341, 374.)  Dr. Patrick explicitly opined that she was "able to exercise fine finger control" and never opined as to any work-related limitations on her bilateral manual dexterity.  (R. at 373.)  Plaintiff's physical therapy records similarly show that the impairments in her upper extremities due to degenerative joint disease did not affect her work-related limitations.  (R. at 443-47.)  When Plaintiff began physical therapy, it was noted that she had an unspecified decreased range of motion and strength in her shoulders but was still capable of carrying, moving, and handling objects.  (R. at 444.)  Though her therapy was supposed to last for two months, Plaintiff was discharged two weeks early because she had already met her goals with the exception of increasing her shoulder abduction range of motion.  (R. at 443, 446.)  It was noted upon discharge that Plaintiff "demonstrated slow but steady progress," had decreases in her pain rating in her shoulders, and had increases in her range of motion.  (R. at 447.)  There is no assessment in the record as to Plaintiff's work-related limitations due to her degenerative joint disease, and no medical

---

[7]  Under the social security regulations, bilateral manual dexterity is the "good use of both hands and the fingers" for "fine movements of small objects" and "repetitive hand-finger actions."  SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185 at *8.

provider specifically opined that her bilateral manual dexterity was limited.

Plaintiff has not shown that the degenerative joint disease in her upper extremities was a severe impairment or limited her bilateral manual dexterity.  Substantial medical evidence instead supports the ALJ's finding that her degenerative joint disease did not interfere with her ability to perform work-related activities.  *See Hammond v. Barnhart*, 124 F. App'x 847, 853 (5th Cir. 2005) (holding that, even though there was "some evidence that point[ed] to a conclusion that differ[ed] from that adopted by the ALJ," there was no error because there was "far more than a scintilla of evidence in the record that could justify [the] finding that [the plaintiff's] impairments were not severe disabilities"); *see also McDaniel v. Colvin*, No. 4:13-CV-989-O, 2015 WL 1169919 at *5 (N.D. Tex. Mar. 13, 2015) (finding that the ALJ did not err in finding impairments to be non-severe because the ALJ considered the relevant evidence in his decision and the plaintiff did "not point to any evidence in the record indicating that her alleged obesity or hearing loss caused any work-related limitations beyond those already found by the ALJ").  The ALJ did not err.

### 2.    *Harmless Error*

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected."  *Mays v. Bowen*, 837 F.2d 1362, 1363-64 (5th Cir. 1988).  "[E]rrors are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision."  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.  *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. Nov. 28, 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).  Accordingly, to establish prejudice that warrants

remand, Plaintiff must show that consideration of the records and limitations as opined by Dr. Patrick might have led to a different decision.  *See id.* at 816 (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

Even if the ALJ erred by finding Plaintiff's arthritis and degenerative joint disease to be non-severe, such an error was harmless because the ALJ considered the combined effects of her severe and non-severe impairments when determining her RFC.  (R. at 18-21.)  When determining the RFC, the ALJ considered her testimony about all of her limitations and pains, the medical evaluations by the different doctors, the diagnostic tests, and X-rays.  (R. at 18-21.)  He noted that Plaintiff had stated in her testimony and function report that she could drive, prepare simple meals, attend to personal care and hygiene independently, shop for groceries alone, and clean her house and laundry for 30 minutes at a time.  (R. at 18-20.)  He also noted that none of the doctors in the record, including Dr. Patrick, determined that Plaintiff was disabled or unable to work due to her combined impairments and that the medical evidence instead showed improvements in her medical conditions, particularly her physical therapy records that showed a "decrease in pain ratings of the bilateral shoulders, increase in shoulder flexion and range of motion, and improved awareness of posture." (R. at 20.)  The ALJ also considered and gave great weight to the medical opinions from the SAMCs, but he found that Plaintiff's "medical history justifie[d] more stringent limitations than found by either [SAMC]." (R. at 20-21.)  After considering this, the ALJ determined that a reduced range of sedentary work was consistent with the medical evidence, namely that Plaintiff could stand and walk for a total of 2 hours out of an 8-hour workday; and sit 6 hours out of an 8-hour workday.[8]

---

[8]  The social security regulations describe sedentary work as work that requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).  "Occasionally" means that it occurs "very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9P, 1996 WL 374185 at *3.

(R. at 18-21.)  He also included nonexertional limitations in the RFC where Plaintiff could never

climb ropes, ladders, or scaffolds and could only occasionally climb ramps/stairs, balance, stoop (*i.e.*

bend at the waist), kneel, crouch (*i.e.* bend at the knee), and crawl.  (R. at 18.)  In doing this, the ALJ

considered the effects of Plaintiff's non-severe impairments in combination with her other severe

impairments and included appropriate limitations that were supported by substantial evidence in the

record.  *See Goodman v. Comm'r of Soc. Sec.*, No. 3:11-CV-1321-G, 2012 WL 4473136 at *10

(holding that "[e]ven if the ALJ should have recognized narcolepsy as a separate and severe

impairment, the . . . error was harmless, as the ALJ considered the effects of a sleep disorder,

whether narcolepsy or sleep apnea, throughout the sequential analysis").  Accordingly, remand is

not required on this issue.

**D.      Weighing Medical Opinons**

        Plaintiff argues that the ALJ erred by failing to assign weight to Dr. Patrick's examining

source opinions.  (doc. 16 at 6-9.)

        *1.      Examining Source Opinion*

        The Commissioner is entrusted to make determinations regarding disability, including

weighing inconsistent evidence.  20 C.F.R. §§ 404.1520b(b) and 404.1527(c).  Every medical

opinion is evaluated regardless of its source.  *Id.* at § 416.927(c).  Generally, an opinion from an

examining source is given more weight than the opinion from a non-examining source.  *Id.*

However, the "standard of deference to the examining physician is contingent upon the physician's

ordinarily greater familiarity with the claimant's injuries.  [W]here the examining physician is not

the claimant's treating physician and where the physician examined the claimant only once, the level

of deference afforded his opinion may fall correspondingly." *Rodriguez v. Shalala*, 35 F.3d 560 (5th

Cir. 1994) (unpublished) (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).  The ALJ

is also free to reject the medical opinion of any physician when the evidence supports a contrary

conclusion. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981).  Moreover, "[w]hen a treating

or examining physician's opinions are inconsistent with other substantial evidence in the record, the

opinions are not entitled to any specific weight in the ALJ's decision." *Smith v. Comm'r of Soc. Sec.*

*Admin*, No. 4:12-CV-00625-DDB, 2014 WL 4467880 at*3 (E.D. Tex. Sept. 9, 2014).

Here, the ALJ noted that Dr. Patrick met with Plaintiff twice and assessed significant

physical limitations due to her back and joint pain.  (R. at 14-15.)  Besides stating that he carefully

considered all of the objective medical evidence and opinions, the ALJ never directly assigned

weight to or explained why he disregarded Dr. Patrick's examining source opinions on Plaintiff's

physical limitations.  (R. at 18.)  This was error.  *See Foley v. Colvin*, No. 3:14-CV-4176-BN, 2015

WL 5836173 at *5 (N.D. Tex. Oct. 2, 2015) (finding that, even though the ALJ identified examining

medical opinions, his failure to "expressly explain the weight" given to these opinion was error).

### 2.   *Harmless Error*

Plaintiff argues that the ALJ's failure to assign specific weight to Dr. Patrick's medical

opinions would have conceivably changed her RFC and the resulting disability determination.  (doc.

16 at 8-9.)  Dr. Patrick opined that Plaintiff had significant limitations due to her impairments during

both of his assessments.  (R. at 337, 373.)  He initially determined that she was limited to sitting for

30 minutes or less, standing for 20 minutes or less, walking half a block at most, was able to lift 10

pounds in her right hand and only 1-2 pounds in her left hand, and had a limited ability to perform

"fine finger control" in her left hand.  (R. at 337.)  During Plaintiff's second evaluation, Dr. Patrick

agreed with his prior determination, except that he now found that she was limited to standing for

only 10 minutes or less, lifting less than 5 pounds in both hands, and exercising "fine finger control"

in both hands without limitation.  (R. at 373.)  Though his opinions were consistent at each

evaluation, Dr. Patrick's test results on Plaintiff's range of motion varied quite significantly between

visits.  (R. at 341-42, 374-75.)  At the initial evaluation, Dr. Patrick determined that she had zero

range of motion in her left shoulder flexion, internal rotation, and external rotation as well as in her

left hip forward flexion and adduction.  (R. at 341-42.)  At Plaintiff's second evaluation six months

later, he determined that she had significantly increased her range of motion in those same areas,[9]

and that her ankles and knees no longer showed any bilateral pain.  (R. at 374-75.)  He additionally

found that Plaintiff's upper extremity grip and strength remained at a "5/5" and her lower extremity

strength increased to a "4/5."  (R. at 374-75.)  Dr. Patrick never noted the improvements in

Plaintiff's range of motion and muscle strength in his opined limitations, but he instead further

limited Plaintiff's ability to stand and carry without explanation.  (R. at 373, 375.)  Because of this,

Dr. Patrick's opined limitations appear to be inconsistent with his own medical testing results.  *See*

20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (explaining that an ALJ may give less weight to a

medical source opinion that is not well supported by relevant evidence, including medical signs,

testings, and laboratory findings).

Plaintiff's examining medical records from Parkland are also inconsistent with Dr. Patrick's

opinions regarding her limitations.  Plaintiff visited Parkland several times over a two-year period

for pain in her back, knees, shoulders, and hips.  (R. at 390-458.)  Though X-rays showed "mild

---

[9]  For example, Plaintiff's range of motion in her left shoulder flexion increased from 0 degrees to 160 degrees, her left shoulder abduction increased from 30 degrees to 170 degrees, her left shoulder external rotation increased from 0 degrees to 45 degrees, her left hip forward flexion increased from 0 degrees to 50 degrees, her left hip adduction increased from 1 degree to 10 degrees, and her lumbar spine flexion extension doubled from 20 degrees to 40 degrees between the two assessments.  (R. at 342, 375.)

moderate" lumbar disc degeneration (R. at 393-94), her musculoskeletal exams showed only a "slightly restricted" range of motion in her left shoulder, back, and hips due to pain (R. at 420, 437, 441).  During several of her musculoskeletal exams, Plaintiff had a "normal range of motion" and appeared "negative for back pain."  (R. at 416-17, 422, 432, 434-36.)  During her physical therapy, she was found capable of carrying, moving, and handling objects with some restrictions.  (R. at 447.)  These medical records similarly do not support Dr. Patrick's medical opinions about Plaintiff's significant physical limitations.

Because Dr. Patrick's opined limitations were contradicted and inconsistent with the remaining medical evidence, including his own test results, Plaintiff has not shown that the ALJ's decision might have changed if he specifically weighed and analyzed Dr. Patrick's medical opinions.  *See Jones v. Colvin*, No. 3:13-CV-0097-P-BH, 2014 WL 1281288 at *10 (N.D. Tex. Mar. 31, 2014) (finding harmless error when the ALJ failed to weigh an examining physician's opinion because all remaining evidence supported the ALJ's decision); *see also Nicaragua v. Colvin*, No. 3:12-CV-2109-G-BN, 2013 WL 4647698 at *6 (N.D. Tex. Aug. 29, 2013) (finding that the ALJ's failure to weigh a consultative examiner's opinion was harmful error only "in the absence of any conflicting opinions from other examining sources").  Plaintiff has failed to show that she was prejudiced by the ALJ's failure to explicitly weigh Dr. Patrick's medical opinions.  *See Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (to warrant remand, a claimant must show prejudice resulting from the ALJ's omission); *see also Newbauer v. Colvin*, No. 3:14-CV-3548-BH, 2016 WL 1090665 at *14 (N.D. Tex. Mar. 21, 2016).  Accordingly, remand is not required on this ground.

## III. RECOMMENDATION

The Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on this 3rd day of March, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE